**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sheral Ann Samons,<br><br>  Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Commissioner of Social Security,<br><br>  Defendant. | No. CV-12-1727-PHX-DGC<br><br>**ORDER** |

Plaintiff Sheral Ann Samons applied for disability insurance benefits and supplemental security income on July 17, 2008, claiming to have been disabled as of February 1, 2008. Tr. 116. Her claims were denied on December 12, 2008, (Tr. 65-72), and upon reconsideration on April 21, 2009 (Tr. 75-78). Plaintiff was granted a hearing in which she appeared before an Administrative Law Judge ("ALJ") on July 16, 2010. Tr. 40. The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act. Tr. 13-27. The ALJ's decision became Defendant's final decision when the Appeals Council denied review on June 27, 2012. Tr. 1-3. Plaintiff then commenced this action for judicial review pursuant to 42 U.S.C. § 405(g). Doc. 1. The Parties have not requested oral argument. For reasons that follow, the Court will affirm Defendant's decision.

**I.   Standard of Review.**

Defendant's decision to deny benefits will be vacated "only if it is not supported by substantial evidence or is based on legal error." *Robbins v. Soc. Sec.*

*Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* In determining whether the decision is supported by substantial evidence, the Court must consider the record as a whole, weighing both the evidence that supports the decision and the evidence that detracts from it. *Reddick v. Charter*, 157 F.3d 715, 720 (9th Cir. 1998). The Court cannot affirm the decision "simply by isolating a specific quantum of supporting evidence." *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975); *see Robbins*, 466 F.3d at 882.

**II.    Analysis.**

For purposes of Social Security benefits determinations, a disability is

> the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

20 C.F.R. § 404.1505.

Determining whether a claimant is disabled involves a five-step evaluation. The claimant bears the burden in steps one through four of showing that (1) she is not engaged in a substantial gainful activity, (2) she has a severe medically determinable physical or mental impairment, and (3) the impairment meets or equals a listed impairment or (4) her residual functional capacity ("RFC") precludes her from performing her past work.[1] If at any step the Commissioner determines that a claimant is or is not disabled, the analysis ends; otherwise it proceeds to step five. The Commissioner bears the burden at step five of showing that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v).

---

[1] RFC is the most a claimant can do with the limitations caused by her impairments. *See Rodriguez v. Bowen*, 876 F.2d 759, 762 (9th Cir. 1989); 20 C.F.R. § 416.945 (a); SSR 96-8p, 1996 WL 374184 (July 2, 1996).

The ALJ found at step one that Plaintiff had worked since the alleged onset date, but concluded that it was unclear whether this activity constituted substantial gainful activity. Tr. 15-16. At step two, the ALJ found that Plaintiff suffered from the following severe combination of impairments: degenerative disc disease and joint disease of the lumbar spine and of the neck, and status post breast reconstructive surgery. Tr. 16. The ALJ determined at step three that none of these impairments or combination thereof met or equaled a listed impairment. Tr. 20. The ALJ then considered the entire record and determined that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with some additional limitations, including "limited to performing simple, repetitive tasks." Tr. 20-21. At step four, the ALJ found that Plaintiff would not be able to perform her past relevant work. Tr. 25. The ALJ concluded at step five that Plaintiff was not disabled because she was capable of adjusting to other work that existed in significant numbers in the national economy. Tr. 25-26.

Plaintiff argues that the ALJ erred by rejecting her subjective complaints without adequate foundation (Doc. 12 at 7-8), by rejecting the opinions of treating and examining physicians without adequate support (*id.* at 5-6), and by finding at step two that she does not have a medically determinable generalized pain syndrome or a severe mental health condition (*id.* at 4-5). The Court will address each argument in turn.

**A.   Plaintiff's Subjective Testimony.**

Plaintiff testified that she has constant pain as a result of fibromyalgia, lower back problems and an arthritic condition. Tr. 51. Plaintiff testified that her treating rheumatologist, Dr. Burhan Chinkawala, M.D., engaged in trigger point testing to diagnose fibromyalgia. Tr. 54. Plaintiff described suffering from phantom pain as a result of her breast reconstruction surgeries. Tr. 56. Specifically, as to her phantom pain, Plaintiff testified that it is more of a pain issue than a restriction or emotional issue. *Id.* She stated that "[s]ometimes they hurt. . . . It's like where the nipple used to be. Sometimes it just throbs and it's not even there. And it's weird. And I don't think it's mental. I really don't." *Id.* Plaintiff reported that without medication her pain varies

from moderately severe to severe, and that the severity of the pain tends to increase with her activity level. Tr. 51-52. To alleviate the pain, Plaintiff has tried tanning and taking vitamins, but her primary coping mechanism is to take hot showers, nap, and lie down. Tr. 52. Plaintiff stated that she lies down at least once a day. *Id.* Plaintiff testified that her medication side effects include nausea, dizziness, and feeling weak. Tr. 52-53.

Plaintiff testified that she suffers from depression and anxiety. Tr. 53. She stated that these disorders make her feel "not real social" and make it "hard just to get out of the house." *Id.* Plaintiff reported having noticed changes in her short- and long-term memory and in her ability to concentrate. *Id.*

Plaintiff described having difficulties sitting, standing, walking, and lifting. Tr. 54-55. She stated that she can sit for 20 minutes, stand for only five minutes, she must shift while standing, she can walk for 15-20 minutes without stopping, and the maximum she can lift from a table is eight pounds. *Id.* Plaintiff testified that it is hard for her to bend, crouch, and stoop, and that she tends to drop things because of grip problems. Tr. 55. Plaintiff reported that her vision improved after having had laser surgery to correct glaucoma. Tr. 56. Plaintiff testified that her pain makes it difficult for her to focus and concentrate, and that her pain is the primary reason why she has been unable to work full-time on a sustained basis since February 2008. Tr. 56-57.

The ALJ must engage in a two-step analysis to evaluate the credibility of a claimant's testimony. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). If the claimant meets this first test, and there is no evidence of malingering, the ALJ "can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996). The ALJ may consider at least the following factors when weighing the claimant's credibility: the claimant's reputation for

truthfulness, inconsistencies either in the claimant's testimony or between her testimony and her conduct, the claimant's daily activities, her work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which claimant complains. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)).

In this case, the ALJ rejected Plaintiff's testimony on four grounds. First, the ALJ found that Plaintiff's pain and other symptom allegations regarding her status post breast reconstruction surgery and medication side effects did not comport with some portions of the objective evidence. For objective evidence negating Plaintiff's phantom pain complaints, the ALJ cited to an August 13, 2009, treatment note from Dr. Fabisoff, M.D., opining that "[Plaintiff] is doing extremely well" just two weeks after her most recent breast reconstruction surgery. Tr. 23. The ALJ gave "*some credit*" to Plaintiff's subjective complaint of phantom pain, finding that "[Plaintiff's] ongoing pain limits her to performing simple, repetitive tasks." *Id.* (emphasis in original). As to Plaintiff's testimony about her medication side effects, the ALJ determined that she could not fully credit the testimony because "after reviewing the record, I can see that the claimant has not consistently reported these side effects to her *doctors*." Tr. 24 (emphasis in original). "[O]ut of an abundance of caution," the ALJ included a limitation in Plaintiff's RFC that precluded her from working around unprotected heights. Tr. 24.

Plaintiff argues that the ALJ improperly rejected her phantom pain subjective symptom testimony due to a lack of supporting objective evidence. Doc. 12 at 7. Plaintiff submits that she underwent eight surgical procedures to the bilateral breast area, and that the ALJ "must not have read the entire medical record or is simply uninterested in [that] fact." *Id.* The Court cannot agree. The ALJ considered Plaintiff's status post breast reconstruction surgery and determined that it was part of Plaintiff's severe combination of impairments after having given Plaintiff's subjective pain testimony "some credit." Tr. 16. The Court finds that the ALJ did not err in finding that the objective evidence did not comport with Plaintiff's phantom pain allegations. *See*

*Carmickle v. Comm'r Soc. Sec. Admin.,* 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.") (citation omitted); *Batson v. Comm'r of Soc. Sec. Admin.,* 359 F.3d 1190, 1197 (9th Cir. 2004) (lack of objective medical evidence supporting claimant's allegations supported ALJ's finding that claimant was not credible). Moreover, the Court concludes that any error in the weight the ALJ gave to Plaintiff's phantom pain symptom testimony is harmless because the ALJ imposed more limitations in Plaintiff's RFC than Plaintiff's own phantom pain testimony necessitated, and these additional limitations benefit Plaintiff. *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) ("the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." (quotation marks and citations omitted)).

Second, the ALJ referred to the "core assessment" Plaintiff completed when she started treatment at Southwest Behavioral Health on September 16, 2009. Tr. 24. In that assessment, Plaintiff stated she was pursuing treatment because "I need to get on disability, so I can have time to heal." Tr. 449. The ALJ interpreted this statement as suggesting that Plaintiff "was seeking out mental healthcare primarily in order to generate evidence for this application and appeal, rather than in a genuine attempt to obtain relief from the allegedly disabling symptoms." Tr. 24. The ALJ did not expressly find that Plaintiff was malingering, and without that finding, a claimant's reason for seeking medical care is generally not a valid factor to weigh in making a credibility determination. As explained below, however, the Court finds that any error in the ALJ's consideration of this factor is harmless given the other specific evidence on which the ALJ relied in assessing Plaintiff's credibility.

Third, the ALJ considered Plaintiff's testimony about her phone job and determined that Plaintiff was "wholly untruthful at the hearing." Tr. 25. This conclusion was based on record evidence establishing that Plaintiff performed the phone job for a matter of months (Tr. 468, 491), contrary to her testimony that the job lasted only a "half

an hour" (Tr. 48). Based on this work activity, the ALJ noted that although "that work activity did not constitute disqualifying substantial gainful activity, it does indicate that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported." Tr. 25. The record contradicts Plaintiff's work history testimony and an ALJ may consider such inconsistencies in assessing a claimant's credibility. *See Thomas*, 278 F.3d at 958-59.

Fourth, the ALJ found that Plaintiff's testimony about her symptoms was not convincing because it was "quite vague and general." Tr. 25. The ALJ provided the following example: "For instance, when asked if she has dropped things, she merely replied 'yes.' She did not elaborate or offer any specific stories." Tr. 25. As with other ordinary techniques of credibility evaluation, the Court finds that Plaintiff's vague symptom testimony constitutes specific evidence on which the ALJ could properly rely in discounting Plaintiff's credibility. *See Smolen*, 80 F.3d at 1284 (the ALJ may consider ordinary techniques of credibility evaluation).

Because the Court concludes that one of the ALJ's reasons supporting her adverse credibility finding is invalid, the Court must determine whether the ALJ's reliance on such reason was harmless error. *See Carmickle*, 533 F.3d at 1162 (citing *Batson,* 359 F.3d at 1195–97). "So long as there remains 'substantial evidence supporting the ALJ's conclusions on . . . credibility' and the error 'does not negate the validity of the ALJ's ultimate [credibility] conclusion,' such is deemed harmless and does not warrant reversal." *Id.* Plaintiff's contradictory work history testimony and her generally vague symptom description testimony constitute specific evidence on which the ALJ could rely in assessing Plaintiff's credibility. This evidence provided the ALJ with clear and convincing reasons to discount Plaintiff's subjective testimony, and that determination is not negated by the ALJ's consideration of the reason for which Plaintiff sought medical treatment. Thus while perhaps not all of the ALJ's proffered reasons are correct, the Court concludes that the ALJ did not err in discounting Plaintiff's subjective testimony.

/ / /

### B.     Medical Opinion Evidence.

"The ALJ must consider all medical opinion evidence." *Tommasetti*, 533 F.3d at 1041; *see* 20 C.F.R. § 404.1527(c); SSR 96-5p, 1996 WL 374183, at *2 (July 2, 1996). The ALJ may reject the opinion of a treating or examining physician by making "findings setting forth specific legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (citation omitted). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Id.* "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Id.* Further, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." *Id.*

Plaintiff argues that the ALJ failed to consider the opinions offered by various treating and examining physicians, including Dr. Barbara Perry, M.D., Dr. Michael D. Rabara, Psy.D., and Dr. Harold Hase, Ph.D. Doc. 12 at 5-6.

### 1.     Dr. Barbara Perry, M.D.

Dr. Perry treated Plaintiff on five occasions at Southwest Behavioral Health from October 2009 to December 2009. Tr. 487-495. On October 8, 2009, Dr. Perry described Plaintiff as "alert and pleasant" but "tearful through alot [sic] of the interview," and she noted that her clinical impression was that Plaintiff suffered from reactive depression. Tr. 489. Dr. Perry treated Plaintiff again on October 26, 2009, and noted that her clinical impression was that Plaintiff was "[i]mproving as situation improves." Tr. 491. During that session, Dr. Perry completed a psychiatric disability form indicating that Plaintiff had "[m]arked" limitations in her ability to "[r]espond appropriately to work pressures in a usual work setting." Tr. 490, 505. Plaintiff next sought treatment from Dr. Perry on December 1, 2009, and on that date Dr. Perry noted that Plaintiff "is alert and oriented and much more animated tha[n] previous," and that her clinical impression was that

Plaintiff "[i]mproved on her own and with therapy." Tr. 495.

The ALJ gave Dr. Perry's opinion "little weight," finding that it "departs substantially from the rest of the evidence of record" and that "Dr. Perry's assessment is inconsistent with her own treatment notes." Tr. 19-20. Specifically, the ALJ found it "difficult to reconcile" Dr. Perry's opinion that Plaintiff could not respond appropriately to work pressures with her previous assessment that Plaintiff had improved on her own. Tr. 20.

Plaintiff argues that the ALJ erred in rejecting Dr. Perry's opinion "by stating that the records suggest improvement" when "[i]mprovement is a relative term [that] does not mean 'cure.'" Doc. 12 at 6. The Court disagrees. The ALJ identified a contradiction in Dr. Perry's opinion and this finding constitutes a specific and legitimate reason to reject Dr. Perry's opinion. *See Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692-93 (9th Cir. 2009) (finding that a contradiction in a treating psychologist's opinion constitutes a specific and legitimate reason to reject the opinion). This does not constitute legal error.

### 2.    Dr. Michael D. Rabara, Psy.D.

Dr. Michael Rabara, a state medical consultant and clinical psychologist, examined Plaintiff on April 15, 2009. Tr. 357. He diagnosed Plaintiff with an anxiety and depressive disorder, and noted that "[e]motionally, she presents as very labile"; "[c]ognitively, . . . her memory skills remain intact, but her thinking skills, particularly when faced with solving novel tasks, were in the borderline range overall and lower than expected"; and that "[h]er performance was also slow on task of divided attention and these findings suggest her emotional distress is indeed affecting her concentration." Tr. 362. He opined that Plaintiff "appears capable of managing benefit payments in her best interest." Tr. 362-363. Dr. Rabara determined that Plaintiff's functional limitations were as follows: "[s]he can remember simple instructions, but may have mild difficulty remembering detailed instructions and work like procedures"; "[s]he may have moderate to severe difficulty sustaining her concentration, carrying out detailed instructions,

1  performing tasks within a schedule, and completing a normal workday at a consistent
2  pace"; "[s]he may have mild to moderate difficulty interacting appropriately with the
3  general public and getting along with coworkers"; "[s]he may have moderate to severe
4  difficulty responding appropriately to supervisory criticism"; and "[s]he may have
5  moderate to severe difficulty responding appropriately to work setting changes." *Id.* The
6  ALJ gave Dr. Rabara's report "little weight" because "it appears that Dr. Rabara gave
7  undue weight to the claimant's subjective complaints." Tr. 20.

Plaintiff argues that the ALJ erred in rejecting Dr. Rabara's opinion. Doc. 12 at 6. The ALJ offered a specific reason to discount Dr. Rabara's opinion – that the opinion placed undue weight on subjective complaints which were properly discounted based on Plaintiff's lack of credibility as discussed above. This does not constitute legal error. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) ("Because the present record supports the ALJ in discounting [the claimant's] credibility, as discussed above, [the ALJ] was free to disregard [an examining physician's] opinion, which was premised on [claimant's] subjective complaints.").

### 3.     Dr. Harold Hase, Ph.D.

State medical consultant Dr. Hase opined that Plaintiff "has some limitations in concentration and detailed instructions," she "may have some difficulty with change," and "[s]he is capable of routine, repetitive work tasks." Tr. 381. The ALJ found that Dr. Hase's evaluation supported Dr. Rabara's opinion and gave it "little weight" for the same reasons she discounted Dr. Rabara's opinion. Tr. 20. The ALJ did, however, include the limitation that Plaintiff is limited "to performing simple, repetitive tasks" in her RFC determination (Tr. 20-21), and this additional limitation comports with Dr. Hase's assessment. Accordingly, although the ALJ did not explicitly provide a reason for discounting Dr. Hase's opinion, any error in this respect is harmless. *See Tommasetti*, 533 F.3d at 1038.

### C.     Severity of Plaintiff's Impairments.

At step two the ALJ found that Plaintiff failed to produce evidence establishing

that she suffered from a medically determinable generalized pain syndrome or a severe mental health condition. Tr. 16-17, 18-20. Plaintiff argues that these findings were erroneous. Doc. 12 at 4-5.

A "physical or mental impairment" is one that "results from anatomical, physiological, or psychological abnormalities *which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.*" 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D) (emphasis added); *see also* 20 C.F.R. § 404.1513(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)."); 20 CF.R. § 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms."). "[U]nder no circumstances may the existence of an impairment be established on the basis of symptoms alone." SSR 96-4P, 1196 WL 374187, at *1 (July 2, 1996).

### 1.   **Medically Determinable Generalized Pain Syndrome.**

The ALJ determined that Plaintiff did not suffer from any medically determinable generalized pain syndrome or arthritic condition based on Dr. Chinikhanwala's treatment notes and the medical expert's testimony. Tr. 16-17. Plaintiff points to evidence in the record purportedly establishing that she suffers from a medically determinable pain syndrome and argues that either the ALJ "has not properly reviewed the entire record or has incredibly misinterpreted evidence to the detriment of the claimant." Doc. 12 at 5. Plaintiff cites Dr. Chinikhanwala's medical records (Tr. 408-412) as evidence that she has been diagnosed with a generalized pain syndrome (Doc. 12 at 5).

The ALJ considered Dr. Chinikhanwala's notes and explained in detail how Dr. Chinikhanwala attempted to identify the cause of Plaintiff's pain symptoms. Tr. 16-17. On January 5, 2009, Plaintiff sought treatment with Dr. Chinikhanwala for "generalized arthralgias and myalgias and her degenerative arthritis of her hands." Tr. 408. Plaintiff returned on August 21, 2009, and Dr. Chinikhanwala reported that Plaintiff had been diagnosed with fibromyalgia and noted that his treatment plan was "to check her baseline

serologies to rule out any underlying inflammatory causes for her pain. Also check her X-rays and X-rays of both her hands." Tr. 411-412. Blood work results from August 24, 2009, revealed that Plaintiff was "negative" for Lyme disease. Tr. 419-420. Hand x-rays taken on August 27, 2009, did "not show evidence of fracture dislocation or lytic or blastic lesions" and revealed that "[a]ll the digits interspaces as well as the carpals metacarpals and bones of the forearms visualized [were] all intact." Tr. 421. On October 8, 2009, Dr. Chinikhanwala noted that Plaintiff's labs "had been negative overall except positive rheumatoid factor," and that there were "[n]o signs of active synovitis and positive rheumatoid factor." Tr. 410. Plaintiff again sought treatment from Dr. Chinikhanwala on November 5, 2009, and the treatment note indicates that Plaintiff "had an extensive work up done which seems to be negative so far including negative cocci and hepatitis serologies." Tr. 409. The most recent note from Dr. Chinikhanwala from April 5, 2010, indicates a diagnostic impression of generalized pain syndrome. Tr. 407.

In considering Dr. Chinikhanwala's treatment notes, the ALJ highlighted his October 8, 2009, finding of "no effusion or synovitis" and noted the importance of this "because synovitis (inflammation of the synovial membrane) is a distinguishing characteristic of rheumatoid arthritis." Tr. 17. The ALJ determined that this finding supported the testifying medical expert's opinion that Plaintiff does not suffer from medically determinable rheumatoid arthritis despite blood work results which had revealed a positive rheumatoid factor. *Id.* The ALJ determined that Dr. Chinikhanwala's notes indicating that Plaintiff had been diagnosed with fibromyalgia were not supported by any objective medical evidence because no evidence established that Dr. Chinikhanwala had undertaken a trigger point examination necessary to diagnose fibromyalgia. Tr. 17. The ALJ specifically noted that she could not credit Plaintiff's "testimony that Dr. Chinikhanwala engaged in trigger point testing" because of her finding that Plaintiff's testimony generally was not credible. *Id.*

Plaintiff points to the medical records from her treatment at Southwest Behavioral Health (Tr. 443-505), which contain references to her pain concerns (Doc. 12 at 5).

Plaintiff also cites to the treatment note of family nurse practitioner Susan Dockins because it "discusses pain producing diagnoses." Doc. 12 at 5. Plaintiff sought treatment from Dockins on April 21, 2010, because she wanted vicodin. Tr. 422. Dockins noted that Plaintiff had "chronic problems" of hypertension-benign, fibromyalgia, myalgia/myositis, but that Plaintiff reported "no symptoms." Tr. 422. Additionally, Plaintiff refers to the report of examining physician Dr. Ken Young, M.D. Doc. 12 at 5. Dr. Young examined Plaintiff on November 21, 2008, and his report indicates that the physical examination revealed mostly normal findings with the exception of there being "some tenderness in the midline paralumbar spine and in the neck region and also to a lesser extent down into the lower extremities below the waist." Tr. 322. His report notes a diagnosis of "[c]hronic pain syndrome, consistent with fibromyalgia." Tr. 323. The Court finds, however, that this evidence does not contain results from "medically acceptable clinical diagnostic techniques" that would support a finding of impairment. *See* SSR 96-4p, 1996 WL 374187 at *1 n. 2. The Southwest Behavioral Health records, Dockins' notes, and Dr. Young's report all rely on Plaintiff's own subjective complaints and self-reporting of prior diagnoses. "These portions of the records do not support a finding of impairment because they are based solely on [Plaintiff's] own 'perception or description' of [her] problems." *Ukolov v. Barnhart*, 420 F.3d 1002, 1006 (9th Cir. 2005) (citations omitted). The Court finds that the ALJ's determination that Plaintiff did not have a medically determinable generalized pain syndrome or arthritic condition does not constitute legal error.

**2.     Medically Determinable Severe Mental Health Condition.**

Plaintiff argues that the ALJ erred in finding that she does not suffer from a severe mental health condition. Doc. 12 at 5. Plaintiff points to the medical opinions and treatment notes of Drs. Perry, Rabara and Hess as evidence supporting her contention. *Id.* For reasons explained above, the ALJ did not err in discounting these medical opinions. Accordingly, the Court cannot find that the ALJ erred with respect to her finding that Plaintiff does not have a severe mental health condition.

**IT IS ORDERED:**

1. Defendant's administrative decision is **affirmed**.

2. The Clerk is directed to enter judgment accordingly.

Dated this 17th day of April, 2013.

_____
David G. Campbell
United States District Judge